[605 NYS2d 172]

Bruce Taylor, Appellant, v State of New York, Respondent. (Claim No. 72628.)

Third Department, December 16, 1993

### APPEARANCES OF COUNSEL

*Andrea Moran,* Kingston *(Mark Denbeaux* of counsel), for appellant.

*Robert Abrams, Attorney-General,* Albany *(Michael S. Buskus* and *Peter H. Schiff* of counsel), for respondent.

### OPINION OF THE COURT

MAHONEY, J.

This appeal concerns claimant's entitlement to damages under the Unjust Conviction and Imprisonment Act (Court of Claims Act § 8-b); more particularly, whether he satisfied his heavy burden of proving that he did not by his own conduct cause or bring about the assertedly unjust conviction within the meaning of Court of Claims Act § 8-b (5) (d). Briefly, the claim arises out of claimant's 1974 conviction, along with codefendant Mary Lou Lynch, of criminal sale of a controlled substance in the third degree for selling heroin to Jon Hansen, an undercover police officer, at an Ulster County bar on March 15, 1974. Steadfastly maintaining his innocence, claimant thereafter embarked upon a 10-year crusade to demonstrate that he was wrongly convicted. His efforts ultimately were successful and in December 1984 the indictment was dismissed. Thereafter, he interposed the instant claim for civil compensation. Inasmuch as the parties concede that claimant has satisfied his burden of proving all elements of the claim except the one noted above, our factual recitation will focus only on the facts relevant to that issue, namely, the testimony adduced at the 1974 criminal trial and claimant's response thereto.

The principal witnesses at the 1974 criminal trial were Hansen, Lynch and claimant. According to Hansen, shortly after he and an assertedly voluntary police informant (Peter Lozito) entered the bar, Lozito asked Lynch if she could get some heroin for Hansen. Hansen further testified that he thereafter saw Lynch approach claimant, engage him in a private conversation, return to Hansen, obtain $25 from him, walk back to claimant and gave him the money in return for the heroin. When Lynch took the stand, she controverted Hansen's testimony, stating that claimant had no involvement whatsoever in the sale. According to Lynch, she obtained the heroin not from claimant but from *claimant's wife,* Debbie Taylor, who was acting as a go-between for Lynch and "Spanish" Joe Martinez, a known drug dealer. In addition, Lynch

indicated that Hansen could not have witnessed the transaction as described because of his location in the bar and the crowded conditions that existed in the bar that evening. While the transcript of claimant's testimony is not contained in the record, the parties concede that he took the stand in his own behalf and denied having any involvement in the drug transaction. However, claimant failed to follow up on Lynch's implication of his wife in the transaction and did not call her to the stand. Indeed, it was later established that claimant directed his attorney *not* to call his wife as a witness because, among other things, he wanted to protect her. Moreover, while claimant also evidently testified at trial that he did not know Lynch and had no knowledge of any drug activity involving Martinez, in a later deposition conducted in connection with the instant claim claimant admitted that such may not have been completely accurate, that is, Lynch may have asked claimant and his wife if they had any drugs to sell as they entered the bar that night with Martinez and that after telling her no, Martinez volunteered his services.

Following trial, the Court of Claims concluded that the foregoing was insufficient to satisfy claimant's burden of proving that he did not cause or contribute to his conviction, and dismissed the claim. The court opined that claimant's desire to "protect" his wife from being called to the stand must have stemmed from knowledge on claimant's part of his wife's involvement in the criminal activity for which he was being charged and, that being the case, claimant's express direction to his attorney not to call her may well have contributed to his conviction (i.e., had the wife taken the stand and incriminated herself, claimant may have been acquitted). Additionally, the court further found that claimant's failure to disclose his conversation with Lynch rather than being fully forthright may have reduced his credibility in the jury's eyes, also contributing to his conviction. Claimant appeals.

We affirm. The gravamen of claimant's argument on appeal is that his decision not to call his wife to the stand or otherwise to elaborate on his testimony were matters of trial strategy which, under the reasoning of this Court in *Lanza v State of New York* (130 AD2d 872, 874), cannot be used as a basis for finding that claimant caused or contributed to his conviction *(see also, Coakley v State of New York,* 150 Misc 2d 903, 910-911). We disagree. In *Lanza,* we held that a claimant's failure to testify at his criminal trial was a matter of trial strategy and, standing alone, could not be said to have

caused or contributed to his conviction. However, absent therefrom were any indications that the decision not to testify was made other than by defense counsel and for a purpose other than enhancing the claimant's position at his criminal trial. Here, had claimant's attorney made the decision not to call claimant's wife it could, consistent with *Lanza,* presumably be characterized as a matter of trial strategy given the wife's reputation as an unreliable witness and the possible damage she could have done to claimant's case if she took the stand and denied involvement in the crime. However, such was not the case. The record clearly demonstrates that claimant either possessed incriminating knowledge or at least suspected that his wife was involved in this crime, that the decision not to call her was made by *claimant,* not defense counsel, and not for the purpose of advancing his own cause but instead to aid and to protect his wife. In our view, these facts remove this case from the realm of mere trial strategy and place it more in the area of withholding potentially exculpatory information. Such activity not only is analogous to the examples of actions cited by the Law Revision Commission which could contribute to a conviction *(see,* Report on Redress for Innocent Persons Unjustly Convicted and Subsequently Imprisoned, 1984 McKinney's Session Laws of NY, at 2932), but is strikingly similar to those situations in which courts have denied recovery *(see, e.g., Stevenson v State of New York,* 137 Misc 2d 313; *Ausderau v State of New York,* 130 Misc 2d 848, *affd on opn below* 127 AD2d 980, *lv denied* 69 NY2d 613). That being the case, we cannot say that the Court of Claims erred in concluding that claimant failed to establish, clearly and convincingly, that he neither caused nor contributed to his conviction.

CREW III, J. P., CARDONA, WHITE and CASEY, JJ., concur.

Ordered that the judgment is affirmed, without costs.