United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 22, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 04-31068

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

MARY ANN COLOMB, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before KING, Chief Judge, DAVIS, Circuit Judge, and FITZWATER,
District Judge.[*]

FITZWATER, District Judge:

In this interlocutory appeal, the government challenges the
district court's bench ruling precluding it from calling sixteen
witnesses of whom it first learned after the criminal trial of four
defendants was continued for several months. We must decide
whether the district court abused its discretion by excluding the
witnesses based on Fed. R. Evid. 611(a) and on its inherent power
to avoid the needless consumption of time and to control its
docket, but without first considering the content of their
anticipated testimony. Concluding the district court abused its

_____

[*]District Judge of the Northern District of Texas, sitting by
designation.

discretion, we VACATE and REMAND for further proceedings.

I

Defendants Mary Ann Colomb, Edward James Colomb, Sammy Davis, Jr. ("Sammy Davis"), and Danny Davis are charged by superseding indictment with various drug-related and firearm offenses arising from the alleged operation of a drug distribution network from November 1991 to November 2001.[1]  They are accused, *inter alia*, of conspiring to possess with intent to distribute not less than fifty grams of crack cocaine, although the government maintains that it can prove they trafficked several kilograms of crack during the conspiracy.

The grand jury handed up the original indictment on May 15, 2002.[2]  Defendants pleaded not guilty.  After several continuances apparently caused by the complexity of the case, the district court set the trial for May 17, 2004.  During late April 2004 Sammy Davis and his codefendants each moved to sever from the remaining counts the trial of his charge of possession of a firearm by a convicted felon.  The court granted the motion, severed the count for a separate trial, and continued the trial of the remaining charges against Sammy Davis and the codefendants until June 1, 2004.[3]  On

---

[1]Danny Davis is not charged in the firearm count.

[2]The grand jury returned superseding indictments on April 15, 2004 and June 9, 2004.  The changes made in the superseding indictments are irrelevant to this appeal.

[3]Sammy Davis was convicted of the offense at the separate trial.

- 2 -

June 1, 2004, as scheduled, the district court conducted jury selection. After the jury was chosen, but before it was sworn, issues arose concerning the scope of the superseding indictment and the anticipated length of the trial. The court on its own continued the trial until September 23, 2004 to allow more time to consider the issue. It later delayed the trial to September 27, 2004.

Beginning in June 2004, the prosecutor, Assistant United States Attorney Brett L. Grayson ("Grayson"), began to receive letters or telephone calls from several individuals—almost all of whom are incarcerated—who said they had information concerning defendants' alleged offenses and offered to testify at trial. The number of contacts intensified in September. Grayson and the case agents interviewed these persons and determined that sixteen should be called as witnesses. From September 12 through September 21, 2004 Grayson advised defendants' counsel that the government intended to call additional coconspirator-type witnesses and provided discovery concerning them.

On September 23, 2004 defendants moved to continue the trial or, alternatively, to strike the new witnesses, contending they did not have sufficient time to prepare for cross-examination. On September 27, 2004, in a bench ruling, the district court denied the continuance motions, concluding that defendants were not entitled to delay the trial based on the new government witnesses. The court reasoned that there might be circumstances in which a

continuance would be warranted based on the addition of a witness, but it concluded that this was not the appropriate type of case given the additional evidence to be offered.

The court also decided on its own to exclude the witnesses whom the government had added after the May 17, 2004 trial date. The court concluded that "[t]he judge is supposed to control his or her docket, the order of the trial, and avoid the needless consumption of time, and to decide all of that on the particular circumstances of the case." R. 14:14. It stated that its ruling was not based on the government's purpose for calling the witnesses or on what each would say, but on "control of the docket, needless consumption of time." *Id.* at 23. The court cited as authority to exclude the witnesses Rule 611(a)[4] and its "inherent power to avoid the needless consumption of time and the Court's ability to control its docket." *Id.* at 15.[5] It did not find that the government's attempt to add the witnesses violated a scheduling order in the case or a court rule, nor did it consider the content of the witnesses' anticipated testimony.[6] Instead, the court pointed out

---

[4]The court actually referred to "Federal Rule of Civil Procedure 611(a)," R. 14:15, but all parties agree that it intended to cite Fed. R. Evid. 611(a).

[5]The court also cited its authority "under the common law," *id.* at 15, 16, but it appears that it was referring to common law principles incorporated in Rule 611(a), *see id.* at 15, 18.

[6]For example, at one point in its ruling the court stated:

> I did not ask him, now, Mr. Grayson, are any

- 4 -

that the government had been ready to go to trial on May 17, 2004 without the witnesses, suggesting that, since the government was prepared at that time to try the case without the testimony, it should be ready for trial without it now.[7]  From the inception of its bench ruling, the court made plain that it was attempting by its decision to establish through appellate review what are the limits on the power of district judges to control their dockets by restricting the witnesses who can testify.[8]

of these eight or ten or twelve witnesses, are they going to give you any more information than you had on May 17th when this trial started other than to show that these four defendants — and some maybe to all, maybe some to only one or two — are guilty of the crimes charged in the indictment that none of the other witnesses are going to address?  I didn't give him that opportunity.  It seemed to me a question that didn't need to be asked simply because we were going to trial on May the 17th.

*Id.* at 18-19.  It elsewhere "conceded that [it] hadn't gone through each one of these witnesses with [Grayson], given [him] the opportunity to do that before [it] said what [it] was going to do[.]"  *Id.* at 23.

[7]The court noted: "And, again, this is a two-year-old case, an over two-year-old case, and I think my statement at the pretrial on the record — off the record was that, gee, you were ready to go on May 17th."  *Id.* at 13.

[8]As it began dictating the ruling, the court noted that it was speaking "for the record for the three judges that will get the opportunity to review this case," *id.* at 3, opined that, "from this judge's view, this is a very significant issue about the role of Article III in the administration of justice and the ability of the Court to control its own docket," *id.* at 4, and stated, "It's a serious matter, Court of Appeal judges.  Please bear with me."  *Id.*

Although at various times the district court referred to some of the following factors as not being germane, being only tangentially germane, or being mere asides to its dispositive reasoning, it appears to have been influenced by how the witnesses came to the government's attention, what motives they likely had for testifying (i.e., prisoners attempting to obtain reduced sentences), and the number of additional witnesses. It noted that, in the interim between the May 17, 2004 and September 2004 trial dates, it had presided over a three-week trial in *United States v. John Timothy Cotton, et al.*, which Grayson had also prosecuted. In *Cotton* the government had called 106 witnesses, many of whom the court thought were cumulative at best, and several of whom had contacted the government after learning about the case, in hopes of obtaining sentence reductions.[9] Similarly, in the instant case the witnesses in question were prisoners who contacted the government after Sammy Davis was convicted of the felon-in-possession charge, stating that they could provide information that could help convict the defendants. The court seemed to be concerned that, with the increasing number of such persons called as witnesses, the

---

[9]The court observed that it saw nothing improper about the government's calling such witnesses, and it stated that its experience in the *Cotton* trial had given it a new perspective on the place and use of such witnesses, despite the potential for abuse. It also expressed the belief that, before calling such witnesses, the government, including Grayson as a prosecutor, would satisfy its obligation to ensure that the trial, including the testimony presented, was a search for the truth, not an effort to get a conviction.

- 6 -

likelihood would also escalate that unreliable testimony could escape government scrutiny, be introduced at trial, and taint the system.[10]

Although the court appears to have been influenced by the foregoing factors, it expressly based its decision on Rule 611(a) and its inherent power to avoid the needless consumption of time and its ability to control its docket.[11]  The court saw the case as one that was two years old, where the government had been ready to go to trial on May 17, 2004, without prisoner witnesses who had come to light only afterward and who would not have been available to testify had the case been tried as scheduled, and who were motivated to help themselves by testifying.  It recognized a general government prerogative to call as many witnesses as it wanted, but, having tried the *Cotton* case, where the government

---

[10]Although we recognize that the district court's concern with the witnesses' motivation to testify apparently influenced its decision, we accept its statements that it excluded the evidence for the reasons it dictated on the record.  We therefore have no reason to address whether the court could have excluded the evidence on this basis, although we note that we have long held that such concerns are appropriately assessed by the jury in determining witness credibility.  *See, e.g., United States v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) (en banc) (holding that informant who receives contingent fee is not disqualified from testifying, and stating that, "[a]s in the case of the witness who has been promised a reduced sentence, it is up to the jury to evaluate the credibility of the compensated witness.").

[11]*See* R. 14:16 ("The basis of the ruling is this Court's authority under the federal rules, the common law, and its inherent power to control its docket and avoid the needless consumption of time.").

called 106 witnesses, and in the circumstances of the present case, it declined to permit the government to exercise that right.

After it ruled, the court permitted the government to make a proffer. The government asserted that the court's decision effectively excluded sixteen witnesses whom it had discovered only after the May 17, 2004 trial date. Grayson detailed the date each witness contacted the government, the manner (letter or telephone call) in which contact was made, and the expected content of the witness' testimony. The government contended the witnesses were helpful to its case, and were not cumulative, because some would testify to drug transactions that constituted unalleged overt acts in furtherance of the conspiracy, and others would corroborate the testimony of other cooperating witnesses. It posited that the evidence would also assist the government in proving drug quantities necessary to establish guilt on the offense charged, i.e., in excess of fifty grams of crack cocaine, and that were relevant to sentencing. One witness, who was not a prisoner, would corroborate the testimony of a witness who had been designated before the May 17, 2004 trial date, and who was subject to impeachment as a coconspirator.

In announcing its ruling, the district court observed several times that reasonable jurists could disagree about whether the new witnesses should be excluded, and it noted that the issue would likely recur. It strongly encouraged the government to appeal its decision, and it granted the government's motion for a trial

- 8 -

continuance so that it could seek permission to pursue an interlocutory appeal. The government obtained the approval of the Acting Solicitor General, and this appeal followed.[12]

## II

We review the "district court's evidentiary rulings for abuse of discretion." *United States v. Griffin*, 324 F.3d 330, 347 (5th Cir. 2003) (citing *United States v. Miranda*, 248 F.3d 434, 440 (5th Cir. 2001)). "A district court by definition abuses its discretion when it makes an error of law." *United States v. Delgado-Nuñez*, 295 F.3d 494, 496 (5th Cir. 2002) (brackets omitted) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

## III

Our first question is whether Rule 611(a) authorized the

---

[12]We have jurisdiction under 18 U.S.C. § 3731, which provides, in relevant part:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

In this case, the United States Attorney certified that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

- 9 -

district court to exclude the witnesses.  Rule 611(a) provides:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

The government contends Rule 611(a) neither supported excluding the witnesses nor supplied an independent basis for determining the admissibility of evidence, because it only empowers a court to control the mode and order of presenting evidence.  Defendants maintain that Rule 611(a) authorized the court to exclude the witnesses because it enables a district court to exercise control over its docket and limit the number of government witnesses to avoid the needless consumption of time.

The command of Rule 611(a) that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" does not support the decision below to exclude the sixteen government witnesses.  "Unlike the vast majority of the other Evidence Rules, Rule 611 does not purport to regulate the admissibility of evidence.  Instead, the rule gives trial courts broad powers to control the 'mode and order' of what is otherwise admissible evidence."  28 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6162, at 338 (1993) (footnote omitted).  Although decisions that a court makes under Rule 611 may indirectly affect whether proof is

admitted, the Rule does not provide an independent ground for excluding otherwise-admissible evidence. *See id.* § 6163, at 344-45. "Thus, the key to understanding the scope of Rule 611 is that it affects admissibility only as an incident to regulating mode and order; the provision itself creates no standards for admissibility." *Id.* at 345-46. "Where a court excludes evidence to advance the policies specifically described in subdivision (a), it is Rule 403 and not Rule 611 that supplies the power for that action." *Id.* at 345.

Defendants rely on a portion of the Advisory Committee note that indicates that questions may arise during trial that "can be solved only by the judge's common sense and fairness in view of the particular circumstances." Appellees Br. at 12 (quoting Rule 611 advisory committee's note).[13] The district court cited this

---

[13]The paragraph at issue states:

> Item (1) restates in broad terms the power and obligation of the judge as developed under common law principles. It covers such concerns as whether testimony shall be in the form of a free narrative or responses to specific questions, the order of calling witnesses and presenting evidence, the use of demonstrative evidence, and the many other questions arising during the course of a trial which can be solved only by the judge's common sense and fairness in view of the particular circumstances.

Rule 611 advisory committee's note (citations omitted).

- 11 -

language, considering it a "catchall." R. 14:18.[14] Defendants appear to suggest that this note language, combined with Rule 611(a)(2)'s directive that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . avoid needless consumption of time," authorizes a court to exclude witnesses when their testimony will needlessly use trial time.

When the note language is understood in its proper context, however, it does not support the assertion that it is a catchall provision for regulating the admission of evidence. A fair assessment of the entire paragraph reveals that, in addressing Rule 611(a)(1), the Advisory Committee is providing examples of "concerns" addressed by a Rule that "restates in broad terms the power and obligation of the judge as developed under common law principles." Each relates to the "mode and order" of interrogating witnesses and presenting evidence. The "many other questions" to which the note refers pertain to the "mode and order" of presenting evidence, not to questions of admissibility. The note language cannot be read to enlarge the powers of the district court found in the text of the Rule.

In explaining its decision, the district court also discussed the part of the Advisory Committee note that relates to Rule

_____

[14]The district court stated: "That's what I'm doing in this case to the best of my ability, Fifth Circuit, under the particular circumstances of this case and the procedural developments that were occasioned by the Court's May 17th ruling." R. 14:18.

611(a)(2).  But as the note suggests, it is Rule 403 that provides the authority to exclude evidence.  *See* Rule 611 advisory committee's note ("A companion piece is found in the discretion vested in the judge to exclude evidence as a waste of time in Rule 403[ ]."ncovered).  "Where a court excludes evidence to advance the policies specifically described in subdivision (a), it is Rule 403 and not Rule 611 that supplies the power for that action."  Wright & Gold, *supra*, § 6163, at 345.  Under Rule 611(a)(2), needless consumption of time is avoided through the court's regulation of the mode and order of interrogating witnesses and presenting evidence.

The district court erred as a matter of law, and therefore abused its discretion, in relying on Rule 611(a) to preclude the government from calling the witnesses in question.

IV

We next consider whether the district court's inherent authority to avoid the needless consumption of time and to control its docket authorized it to exclude the witnesses.  The government posits that the court abused its discretion in excluding non-cumulative evidence without first considering its content and after acknowledging that there was no evidence that the testimony was untruthful.  Defendants maintain that, like court orders that limit the number of alibi or character witnesses a party may call, the district court's ruling prohibiting the new witnesses from

testifying was a proper use of its inherent power.

A

A district court has inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (referring to power to stay proceedings as incident to such inherent powers). "The federal courts are vested with inherent power 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases[,]' . . . includ[ing] the power of the court to control its docket[.]" *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (footnote omitted) (addressing inherent power of court to control its docket by dismissing case as sanction for failing to obey court order) (quoting *Link v. Wabash R. R. Co.*, 370 U.S. 626, 630 (1962), and citing *In re United Mkts. Int'l, Inc.*, 24 F.3d 650, 654 (5th Cir. 1994)). We have approved various rulings based on the district court's invocation of this inherent power. *See, e.g., United States v. Hughey*, 147 F.3d 423, 430-31 (5th Cir. 1998) (concluding that district court had power and duty to control its docket and ensure that counsel properly prepared so that case could be tried rather than continued, and holding that district court did not err by requiring defense counsel either to commit to firm trial date or withdraw from case); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 218 (5th Cir. 1998) (holding that inherent

- 14 -

authority to control docket authorized district court to decide order in which to hear and decide pending issues).  We have also recognized that a district court may impose reasonable time limits on the presentation of evidence and the examination of witnesses. "The district court has broad discretion in managing its docket including maintaining the pace of the trial by interrupting counsel or setting time limits.  Reasonable limits on questioning 'based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant' are permissible."  *United States v. Maloof*, 205 F.3d 819, 828 (5th Cir. 2000) (alteration in original; citation omitted) (citing *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996), and quoting *United States v. Gray*, 105 F.3d 956, 964-65 (5th Cir. 1997)); *see also Aetna Cas. & Sur. Co. v. Guynes*, 713 F.2d 1187, 1193 (5th Cir. 1983) (affirming decision in civil case to limit number of expert witnesses who could testify).  Our precedents thus allow a court to place reasonable structural limits on the government's case, leaving the prosecution room to operate within them by culling unnecessary evidence, prioritizing witnesses, and streamlining testimony, without sacrificing significantly probative evidence as a result of arbitrary restrictions that unduly constrict its ability to

prosecute crimes.[15]

In reviewing the district court's exercise of its inherent power in this case, we set to one side whether the court could have placed structural limits on the government's case that might have indirectly affected the presentation of its evidence but that did not specifically exclude witnesses individually or categorically. The district court did not impose such restrictions; it simply forbade the government from calling all witnesses designated after the May 17, 2004 trial date, leaving the prosecution without viable options to fill the voids in its proof. We focus instead on the court's inherent authority to take *ad hoc* measures, such as the one adopted here.

"The scope of the district court's discretion to manage trials before it is and must be particularly broad. . . . [D]istrict courts have wide-ranging control over management of their dockets, the courtroom procedures, and the admission of evidence." *United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004). But in the context of a criminal prosecution, "[s]ubject to the district court's reasonable management of cases brought to the court for trial, the government too has broad discretion to prosecute crimes,

---

[15]We use the term "structural" as convenient shorthand to describe reasonable restrictions on the government that regulate the overall presentation of its case, such as limits on time or on the number of witnesses, but that leave the prosecution free to make individual tactical and methodological choices within these limits, such as concerning whom it will call to testify and what other evidence it will introduce.

probably limited otherwise only by an unconstitutional motive."
*Id.* at 274 (citation omitted). Moreover, as in the present case,
"when the government prosecutes a conspiracy involving a series of
crimes . . . the government must be given additional latitude
during trial to carry its burden of proof." *Id.* We think the
proper adjustment of the court's broad inherent power to control
its docket and manage trials, and the government's correspondingly-
broad discretion to prosecute crimes, requires that when, as here,
the district court invokes an *ad hoc* measure, it must consider the
content of facially-relevant and admissible evidence before
excluding it based on its inherent power.[16]

B

The government's proffer reflects several grounds for
concluding that the evidence is facially relevant and admissible.
Fifteen witnesses can testify to distinct overt acts, such as drug
sales, that involve one or more defendants, that are not charged in
the superseding indictment, but that were allegedly undertaken in
furtherance of the conspiracy. The government is entitled to prove
uncharged overt acts. *See United States v. Jackson*, 845 F.2d 1262,
1265 (5th Cir. 1988) (holding that the government "may prove

---

[16]Although we discuss the court's obligation to consider the
content of anticipated testimony when imposing *ad hoc* limits on
witnesses, we do not suggest that content considerations are
irrelevant when imposing structural limitations. Instead, in such
circumstances the content assessment is effectively subsumed in the
determination of what restrictions are reasonable.

additional overt acts not listed in the indictment"). No
previously-identified witness can testify concerning these
transactions.

Moreover, in a drug case, although some drug quantity evidence
is more pertinent to sentencing than to trial, drug quantity must
be charged and proved beyond a reasonable doubt when the statutory
maximum sentence increases based on the amount. *See, e.g., United
States v. Doggett*, 230 F.3d 160, 164-65 (5th Cir. 2000).[17] The
government's interest in establishing additional drug quantities
can thus be substantial.[18]

The remaining witness, who is not presently incarcerated,
intends to testify to facts that the government says will
corroborate the testimony of a previously-identified witness
regarding numerous drug transactions, over a period of about
eighteen months, involving some of the defendants.

---

[17]The district court made its ruling after the Supreme Court
granted certiorari in *United States v. Booker*, ___ U.S. ___, 125 S.
Ct. 738 (2005), but before it decided the case in January 2005.
Recognizing the rule of cases like *Doggett*, and perhaps
anticipating one possible outcome of *Booker*, the government argued
that the new witnesses would enable it to prove the required
quantity of at least fifty grams of crack cocaine "and would
provide for sentencing purposes relevant conduct quantities of
controlled substances." R. 14:21-22.

[18]We recognize that the government's right to prove additional
drug quantities is not completely unfettered. A district court may
in its discretion conclude that the government has reached the
point where it should not be permitted to use valuable trial time
to prove relatively small amounts that probably will not affect the
jury's determination of drug quantity but likely will bear only on
a sentencing issue to be decided by the judge.

According to the government, the evidence to be adduced from all sixteen witnesses will strengthen its case by demonstrating the breadth and scope of the defendants' drug trafficking activities, showing that during the conspiracy numerous crack and powder cocaine transactions occurred in several cities in two states.

C

It follows from the foregoing recitation of the government's facially-relevant evidence that defendants' reliance on cases that recognize the district court's authority to limit the number of alibi or character witnesses is misplaced. Character witnesses necessarily testify to a limited range of issues, and such testimony is often cumulative when presented by several witnesses. *See, e.g., United States v. Edwards*, 702 F.2d 529, 530 (5th Cir. 1983) (holding that testimony of more than five character witnesses would have been cumulative). The government's evidence, by contrast, pertains to several discrete drug transactions that are probative of the nature and details of defendants' alleged participation in the conspiracy.

Unlike the witnesses in the present case, who will testify to several different drug transactions and disparate conduct to which others cannot testify, the witnesses in *Loux v. United States*, 389 F.2d 911 (9th Cir. 1968), the sole alibi case that defendants discuss, would all have related the same fact: that the defendant was playing basketball in prison at the time of the crime. *Id.* at

- 19 -

917. The district court in *Loux* allowed the defendant to subpoena five convicts to testify to this alibi, but drew the line there, denying a request to subpoena five additional convicts. The Ninth Circuit found no abuse of discretion, noting that, "[a]s a practical matter, the court needs the right to impose some limitation on the number of witnesses testifying *about a particular fact*." *Id.* (emphasis added).

D

In the instant case, the district court ruled that presenting the additional witnesses would needlessly consume time, but it did not assess the content of their anticipated testimony. Although it was apparently influenced by such factors as how the witnesses came to the government's attention, their likely motives for testifying, and the number of additional witnesses, the court essentially concluded, based on the fact that the government was prepared to go to trial on May 17, 2004 and presumably believed its evidence was then sufficient to establish guilt, that introducing additional evidence would necessarily be wasteful and a needless expenditure of time and should be pretermitted as a function of docket control. The court abused its discretion by excluding the witnesses on this basis, without first considering the content of their anticipated testimony.[19]

_____

[19]Our conclusion does not suggest that a district court must necessarily consider the content of anticipated testimony before it excludes a witness who was not timely disclosed in accordance with

Defendants also maintain that Rule 403[20] authorized the district court to exclude evidence that it determined would result in needless consumption of time. We do not doubt that the court *could* have acted under Rule 403, but we agree with the government that the court did not do so.[21] Because we review a Rule 403 decision for abuse of discretion, *see, e.g., United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989), and since the district court did not exercise its discretion on this basis or engage in a balancing process that we can review, we have no occasion to decide whether the sixteen witnesses were properly excluded under the Rule.

---

a court order or rule. Although in some contexts we have expressed a decided preference for continuances over excluding witnesses, *see, e.g., United States v. Garrett*, 238 F.3d 293, 301 (5th Cir. 2000) (reversing district court exclusion of twenty five government witnesses where, *inter alia*, prejudice could have been cured by brief continuance), we recognize that there are instances, such as when the speedy trial clock is about to expire, when the case must be tried when set, and the court may in its discretion exclude a government witness who was not timely disclosed and whose testimony would unduly prejudice the defendant.

[20]Rule 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[21]The district court referred to Rule 403 when reading the Advisory Committee note to Rule 611(a), but it did not base its decision on the Rule.

Our decision today does not, of course, preclude the district court on remand from considering, either in a pretrial hearing or during trial, whether some or all of the witnesses in question should be excluded under Rule 403 (or, for that matter, on any other proper procedural or evidentiary basis). But because Rule 403 permits the exclusion of relevant evidence only if, as pertinent here, "its probative value is substantially outweighed by . . . considerations of . . . waste of time, or needless presentation of cumulative evidence," it follows that the district court must in some manner consider the content of the witnesses' anticipated testimony so that it can assess its probative value before deeming it inadmissible. *See Swajian v. Gen. Motors Corp.*, 916 F.2d 31, 34 (1st Cir. 1990) (holding, *inter alia*, that district court erred as a matter of law by failing to fully consider probative value of evidence before excluding it under Rule 403).

VI

Having determined that the district court's ruling cannot stand, we return to its request for guidance, including its apparent concern that a decision contrary to its own will signal that the government, rather than the district court, effectively controls the presentation of government witnesses in a criminal trial.[22]

---

[22]At the conclusion of its bench ruling, the district court stated:

There are in fact several tools available to a court that seeks to rein in a prosecutor's extravagant use of limited court time. The court can rely on its inherent power to control its docket and manage trials, provided it considers the content of the evidence before excluding it.[23] The court can place structural limits on the government's presentation of its case, as long as they are reasonable and appropriately recognize the prosecution's broad discretion to prosecute crimes. And, provided it considers the content of the government's proposed testimony and engages in the required balancing process, the court can exercise its discretion under Rule 403 to exclude evidence when its probative value is substantially outweighed by considerations such as waste of time or needless presentation of cumulative evidence.

\* \* \*

We note in closing that this case has been pending since May

> [U]nder these kind of circumstances, if it's the government's call about who's going to come rather than the district judge's call, the Fifth Circuit needs to tell me, and I suspect and suggest respectfully to them, all the other district judges. That's how it works, District Judge. You just sit there and let them keep going.

R. 14:47.

[23]We do not hold that the district court, when exercising its inherent authority and considering whether to exclude facially-relevant and admissible evidence, must follow any prescribed procedure. The district court remains firmly in control, retaining the discretion to decide the specific method that is appropriate under the particular circumstances of the case, provided the one it employs is adequate to assess the content of the evidence.

- 23 -

2002 and, despite its apparent complexities,[24] it is time that it is tried.  We therefore encourage the district court to set a prompt trial date and give the government and the defendants their day in court.[25]  The district court's September 27, 2004 bench ruling excluding the government from calling the witnesses in question is VACATED, and this case is REMANDED for further proceedings consistent with this opinion.

VACATED and REMANDED.

_____

[24]The government asserts that "this is a relatively complex drug case involving numerous drug sales, purchases, and negotiations over the course of ten years."  Appellant Br. at 22.

[25]The district judge stated during his bench ruling that he did not "recall exactly why it is that this case is going on two and a half years old," and specifically did not recall whether his "intervening [serious illness] played some role in it."  R. 14:5. By urging that this case be brought expeditiously to trial, we intend neither disrespect for, nor insensitivity toward, our colleague or the burdens under which he labored during his illness.