**UNITED STATES**

**v.**

**Mary Ann COLOMB, et al.**

**No. CR. A. 02–CR–60015.**

United States District Court,
W.D. Louisiana.

Aug. 31, 2006.

Brett L. Grayson, U.S. Attorneys Office (LAF), Lafayette, LA, for Plaintiff.

Gerald J. Block, Lafayette, LA, Stephen H. Shapiro Sharp Dooley (BR), Baton Rouge, LA, Valerie G. Garrett, Amos &

Garrett, Lafayette, LA, J. Rodney Baum, Law Firm of J. Rodney Baum, Baton Rouge, LA, Lester J. Gauthier, Jr., Lafayette, LA, William M. Dauphin, Jr., William L. Goode, Lafayette, LA, for Defendants.

### RULING ON DEFENDANTS' MOTIONS FOR NEW TRIAL

MELANCON, District Judge.

Before the Court are defendants Mary Ann Colomb [Rec. Doc. 462], Edward Colomb [Rec. Doc. 464], Sammy Davis, Jr. [Rec. Doc. 468], and Danny Davis' [Rec. Doc. 469] Motions for New Trial, collectively referred to hereinafter as "the Colombs." Also before the Court are the government's Opposition [Rec. Doc. 493], Edward Colomb's Reply [Rec. Doc. 500] and Danny Davis's Reply [Rec. Doc. 502] thereto. A hearing on the motions was conducted on July 14, 2006. For the following reasons, each defendant's motion must and will be granted.

### I. Procedural History

#### A. The May 2004 Trial Setting

On April 15, 2004, a federal grand jury returned a second superseding indictment charging each of the defendants with Conspiracy to Possess with Intent to Distribute Cocaine Base in violation of Title 21, U.S.C. § 846 (Count One); charging Sammy Davis, Jr. with Distribution of Cocaine Base in violation of Title 21, U.S.C. § 841(a)(1) (Counts Two and Three); charging Mary Ann Colomb, Edward Colomb and Sammy Davis, Jr. with Possession of Cocaine Base with Intent to Distribute in violation of Title 21, U.S.C. § 841(a)(1) (Count Four); charging Mary Ann Colomb, Edward Colomb, and Sammy Davis, Jr. with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18, U.S.C. § 924(c)(1)

(Count Five); charging Sammy Davis, Jr. with Convicted Felon in Possession of a Firearm in violation of Title 18, U.S.C. § 922(g) (Count Six); charging Mary Ann Colomb with Establishment of Manufacturing Operations in violation of Title 21, U.S.C. § 856(a)(2) (Count Seven); and charging all defendants with Forfeiture in violation of Title 21, U.S.C. § 853 (Count Eight).[1]

On May 17, 2004, prior to the commencement of trial, the Court granted defendants' motions to sever Count Six (Felon in Possession of a Firearm) against Sammy Davis, Jr. [Rec. Doc. 287]. The trial on the remaining charges of the second superseding indictment (Counts One, Two, Three, Four, Five, Seven, and Eight) against Sammy Davis, Jr. and the other three defendants was rescheduled for June 1, 2004. [Rec. Doc. 287]. The trial of Sammy Davis, Jr. on Count Six proceeded and the jury returned a guilty verdict on May 18, 2004. [Rec. Doc. 290].

#### B. The June 2004 Trial Setting

On June 2, 2004, after the jury had been selected but prior to having been sworn, a hearing was conducted. The Court determined that the trial's length had been underestimated by the attorneys for the parties and by the Court. After the hearing, the Court and the attorneys concluded that dismissing the jury and resetting the trial for September 27, 2004 was appropriate. [Rec. Docs. 327 & 357].

#### C. The September 2004 Trial Setting and Appeal

On September 23, 2004, four days before the rescheduled trial was to start, defendants moved to strike sixteen witnesses that the government had recently added to its witness list, contending that they lacked sufficient opportunity to prepare for cross-

---

1. The original indictment was returned on May 15, 2002. [Rec. Doc. 1]. The first superseding indictment was returned on April 15, 2004. [Rec. Doc. 220].

examination of the newly added witnesses. [Rec. Docs. 374 & 379].[2] Until the government disclosed the additional witnesses on September 14, 15 and 22, 2004, none of the sixteen witnesses had been listed. Each of the sixteen new witnesses, all of whom were then incarcerated at Federal Bureau of Prisons facilities primarily in Texas, had contacted the government in the weeks preceding the September 27, 2004 trial and offered to assist the government in the prosecution of defendants.

Prior to the start of the September 27, 2004 trial, the Court denied defendants' motions to strike [Rec. Docs. 376 & 381], but excluded the newly added government witnesses as cumulative. The Court reasoned that the government had previously maintained it could prove its case beyond a reasonable doubt as to the counts charged in the second superseding indictment without the newly added witnesses. After ruling that the sixteen inmate witnesses would not be allowed to testify, the government accepted the Court's offer to continue the trial to afford the government the opportunity to appeal its decision.

On August 24, 2005, the United States Court of Appeals for the Fifth Circuit vacated this Court's order excluding the additional witnesses [Rec. Doc. 391] on procedural grounds. That Court concluded while a district judge may exclude cumulative testimony, the judge could not do so "without first considering the content of the [additional witnesses'] anticipated tes-

timony."[3] *United States v. Colomb,* 419 F.3d 292, 301–02 (5th Cir.2005).

### D. The March 2006 Trial

On March 17, 2006, three days before the start of the trial that resulted in defendants' convictions, the Court conducted an evidentiary hearing in accordance with the Fifth Circuit ruling. At the hearing, the Court and the lawyers for the parties examined the newly added government witnesses. For reasons not known by the Court, the government produced only fourteen of the original sixteen witnesses that it initially advised the Court it intended to call to testify at the September 27, 2004 trial. After examination, the Court ruled that thirteen of the fourteen inmate witnesses could testify. One witness was excluded because of his admitted conversations with other inmates about the case against the Colombs.[4]

On March 31, 2006, after a ten day trial, Mary Ann Colomb was found guilty of Count One (Conspiracy to Possess with Intent to Distribute Cocaine Base), Count Four (Possession of Cocaine Base with Intent to Distribute), and Count Six (Establishment of Manufacturing Operations).[5] Mary Ann Colomb was found not guilty of Count Five (Possession of a Firearm in Furtherance of a Drug Trafficking Crime). Edward Colomb was found guilty of Count One (Conspiracy to Possess with Intent to Distribute Cocaine Base) and Count Four (Possession of Cocaine Base with Intent to Distribute) and he was

---

2. Defendants alternatively moved to continue the trial.

3. The Circuit Court further held that a district judge may not exclude evidence pursuant to Federal Rule of Evidence 611, nor its inherent authority to avoid the needless consumption of time and to control its docket. Rather, the Fifth Circuit concluded that Federal Rule of Evidence 403 "supplies the power for that action." *Colomb,* 419 F.3d at 298.

4. Ultimately, eleven of the thirteen witnesses testified at trial.

5. After defendants' motions to sever Count Six against Sammy Davis, Jr. were granted on May 17, 2004, a redacted version of the second superseding indictment was prepared by the government, which renumbered the remaining counts and was used at trial.

found not guilty of Count Five (Possession of a Firearm in Furtherance of a Drug Trafficking Crime). Sammy Davis, Jr. was found guilty of Count One (Conspiracy to Possess with Intent to Distribute Cocaine Base), Count Two (Distribution of Cocaine Base), and Count Three (Distribution of Cocaine Base). Sammy Davis, Jr. was found not guilty of Count Four (Possession of Cocaine Base with Intent to Distribute) and Count Five (Possession of a Firearm in Furtherance of a Drug Trafficking Crime). Danny Davis was found guilty of Count One (Conspiracy to Possess with Intent to Distribute Cocaine Base), the only charge brought against him.

### E.  Defendants' Motions for a New Trial

On April 5, 2006, three days after the jury returned its guilty verdict, excluding the intervening weekend, defendants jointly filed a Motion for Extension of Time to File Motion for New Trial. [Rec. Doc. 436]. The Court granted defendants' motion, extending the deadline for filing motions for a new trial for fifteen days, or until April 26, 2006. [Rec. Doc. 437]. On April 26, 2006, each defendant timely filed a motion for a new trial. [Rec. Docs. 462, 464, 468, & 469].

As a review of the trial transcript and the record will reveal, the crux of the defenses focused on the unreliability of inmate witness testimony. Defense counsel frequently referred to the testimony of both the newly added as well as the initially listed inmate witnesses, as "snitch testimony." [6] It is clear from their testimony that the inmate witnesses hoped to gain favor with the government, which could result in the filing of a motion pursuant to Federal Rule of Criminal Procedure 35(b) based on their substantial assistance in the prosecution of the defendants and might result in reductions in their sentences.

### F.  The March 16, 2006 Letter

During the trial, Joseph T. Mickel, an Assistant United States Attorney for the Western District of Louisiana not assigned to the case, received a letter dated March 16, 2006 [Rec. Doc. 527] from Quinn Alex, a federal inmate then housed at a Federal Bureau of Prisons facility located in Three Rivers, Texas. Alex's letter alleged that one of the government's newly added witnesses, Charles Anderson, offered to sell to him "some pictures of some people who was going to trail [sic]" for the sum of $2,200. [Rec. Doc. 527]. Anderson's offer allegedly occurred while both he and Alex were incarcerated at FCI–Three Rivers. [See Rec. Doc. 527]. Upon the government's disclosure of Alex's letter to the Court on March 24, 2006, the government

---

**6.** Prior to the trial of this matter, the undersigned judge presided over another ten-year drug conspiracy trial that lasted three weeks, Criminal Docket No. 6:00–CR–60029, *United States v. Timothy Cotton, et al.*, in which many of the same inmate witnesses that testified in the instant case also testified against the defendants in that case. The credibility of the inmate witnesses who testified in *Cotton*, and who defense counsel in that case alleged operated an in-prison network known as the "Hot Boyz," was put at issue. The network allegedly traded pictures of defendants and offered information for perjurious testimony in pending criminal cases. The government inmate witnesses who testified in the *Cotton* case were housed in common Louisiana parish facilities in Lafayette and St. Martin Parishes during the *Cotton* trial. At the time of the hearing on defendants' motions to strike, some of the *Cotton* witnesses were being housed in the same facilities as other inmate witnesses who were scheduled to testify at trial in this matter.

During the hearing on defendants' motions for new trial conducted on July 14, 2006, the Court learned that some of the inmate witnesses who testified in this case and in the *Cotton* case are scheduled to be called as government witnesses in another case pending in the Lafayette Division of this District, Criminal Docket No. 6:01–CR–60127, *United States v. George Celestine*, assigned to United States District Judge Rebecca F. Doherty.

was ordered to immediately produce the letter to all defense counsel. Following the weekend recess, Mary Ann Colomb made an oral motion for a mistrial [Rec. Doc. 438] on March 27, 2006 and then filed a memorandum in support of her motion. [Rec. Doc. 439]. Mary Ann Colomb argued that allowing the trial to proceed with the "cross-contamination" of inmate witness testimony would violate her constitutional rights "to a fair trial, adequate assistance of counsel in the cross examination of witnesses against her and due process." [Rec. Doc. 439, p. 5]. In turn, each of the remaining defendants adopted Mary Ann Colomb's motion for a mistrial.

On March 27, 2006, after a hearing conducted outside the presence of the jury, the Court denied Edward Colomb, Sammy Davis, Jr., and Danny Davis' motions, but reserved ruling on Mary Ann Colomb's motion for a mistrial. [Rec. Doc. 438]. On March 29, 2006, the Court denied Mary Ann Colomb's motion. [Rec. Doc. 441]. Each defendant in turn preserved his or her objection to the Court's denial of a mistrial for appeal. Following the Court's denial of defendants' motions for a mistrial, on motion of defendants, the Court ordered the United States Marshal to transport Alex from the Three Rivers facility to Lafayette so that he could be questioned about his letter to AUSA Mickel. At the hearing, on the advice of court appointed counsel, Alex repeatedly invoked his Fifth Amendment right against self-incrimination and refused to answer any questions about the content of his March 16, 2006 letter. [Rec. Doc. 442]. After the hearing, the prosecution removed Anderson and Raul Ruiz, another of the thirteen newly added inmate witnesses who had been incarcerated at FCI–Three Rivers, from its witness list.

## II. Standard By Which the District Court is to Evaluate a Defendant's Motion for a New Trial.

Federal Rule of Criminal Procedure 33 states in pertinent part, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." [7]

In *United States v. Wall*, 389 F.3d 457 (5th Cir.2004), the United States Fifth Circuit Court of Appeals set out the standard for granting a motion for new trial:

A district court's decision to grant or deny a motion for new trial pursuant to Rule 33 is reviewed for an abuse of discretion. This standard is necessarily deferential to the trial court because the appellate court has only read the record and, unlike the trial court, did not see the impact of witnesses on the jury or observe the demeanor of witnesses. Questions of law are reviewed *de novo*. On mixed questions of law and fact, this court reviews the underlying facts for abuse of discretion, but the conclusions to be drawn from those facts *de novo*. This court will uphold the trial court's decision to grant a new trial if that decision is in the interest of justice. The "interest of justice" may be based on the trial judge's evaluation of witnesses and weighing of the evidence ... Rule 33 permits the district court to vacate judgment and grant a new trial "if the interest of justice so requires." The interest of justice standard "requires the district court to balance the alleged errors against the record as a whole and evaluate the fairness of the trial." However, Rule 33 divides mo-

---

7. "The interest of justice is not an independent ground for granting a Rule 33 motion, but rather is the standard for granting *any* Rule 33 motion, whether based on newly dis-covered evidence or other grounds." *United States v. Wall*, 389 F.3d 457, 468 (5th Cir. 2004) (citing *United States v. Villarreal*, 324 F.3d 319, 325 (5th Cir.2003)).

tions for new trial based on the interest of justice into two different subcategories: (1) motions based on newly discovered evidence; and (2) motions based on "other grounds." The former may be brought within three years of the verdict or finding of guilt, while the latter must be brought within seven days of the verdict or finding of guilt. Generally, this court has held that the trial court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict. A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant.

*Id.* at 465–66 (*internal citations omitted*). The *Wall* Court further articulated that "any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *Wall*, 389 F.3d at 474 (citing Wright, Federal Practice & Procedure § 556 (3d ed.2004)).[8]

### III. The Trial Court's Basis for the Grant of Defendants' Motions for New Trial.

██ This Court, as would be any Article III Court, is loathe to set aside guilty verdicts in a criminal case. It is well established that motions for new trial are addressed to the discretion of the Court, which should be exercised with caution, and "the power to grant a new trial... should be invoked in only exceptional cases." *United States v. Robertson*, 110 F.3d 1113, 1120 (5th Cir.1997). However, Rule 33 of the Federal Rules of Criminal Procedure exists, because in the course of

human experience, human beings, including federal judges, make mistakes.

As the Fifth Circuit has stated, albeit in a different context, "the preservation of our civil liberties depends upon the faithful and ethical exercise of power by those who bear the mantle of public trust." *Dickson v. Quarterman*, 2006 WL 2457073, *7 (5th Cir.2006). This Court erred when it denied defendants' motions for mistrial [Rec. Docs. 438 & 441] after the government disclosed Quinn Alex's letter [Rec. Doc. 527] on March 24, 2006. A mistrial should have been granted and the government ordered to investigate the letter's content before allowing eight additional inmate witnesses to testify.[9]

Had the existence of Alex's March 16, 2006 letter been known at the time of the March 17, 2006 evidentiary hearing relating to inclusion of inmate witness testimony, the Court *would not* have allowed the fourteen new inmate witnesses—thirteen of whom the Court ruled could testify, eleven of whom actually testified—to testify. Rather, the Court would have ordered yet another continuance and further ordered the government to investigate the allegations contained in Alex's letter.

██ Due to the Court's failure to grant defendants' mistrial motions, a procedural morass ensued when Alex exercised his Fifth Amendment right against self incrimination and the Court properly excluded Alex's letter from jury consideration. As such, defendants' substantial rights, that is the right to due process and the right to fair trial, were adversely affected.

---

**8.** The Court recognizes that the five *Berry* factors apply only when the grounds for new trial involve "newly discovered evidence." See *Wall*, 389 F.3d at 474 (stating "if the motion [for new trial] is based on any 'other grounds,' the trial court is not required to consider the restrictive *Berry* rules")(referring to *Berry v. Georgia*, 10 Ga. 511 (1851)).

**9.** Prior to the government's disclosure of the Alex letter, three inmate witnesses (Dexter Harmon, John Roberts and Leon Dancy) had testified against the Colombs on March 21 and 22, 2006, in the government's case-in-chief.

At trial, the government relied heavily on inmate testimony to establish the substantive acts allegedly in furtherance of the ten-year drug conspiracy in Count One of the second superseding indictment. Likewise, the government also relied heavily on vague inmate testimony to establish the elements of Count Six, Establishment of Manufacturing Operations in violation of Title 21, U.S.C. § 856(a)(2), against Mary Ann Colomb. Because the Court failed to grant the mistrial motions, counsel for defendants were unable to present to the jury (as they may be able to present to a future jury) information that became known to the Court and the lawyers during the trial—information that went to the very heart of the defenses they raised for their clients.

Had the facts known by the trial judge on March 24, 2006 been known to the jury when it began its deliberations on March 30, 2006, the trial judge is left with the definite impression and belief that some— and possibly all of the defendants—would have been acquitted. The Court's denial of the mistrial motions was therefore not harmless, but rather reversible error.

■ It is axiomatic that matters of witness credibility are for the jury to decide. See *United States v. Dadi*, 235 F.3d 945, 951 (5th Cir.2000). The fact that many of the witnesses who testified against the defendants in this case testified pursuant to plea agreements does not affect this maxim. However, the jury in this case did not possess, through no fault of defendants, all of the information known by the Court and the lawyers, information necessary to evaluate the credibility of the government inmate witnesses. Defendants thus were adversely impacted and denied their basic right to a fair trial, not a perfect trial, but a fair trial.

## IV. Post–Script

Although not germane to this Court's decision to grant defendants' motions for new trial, events that have occurred post-trial *may* impact the retrial of defendants.

On April 3, 2006, three days after the guilty verdict, William L. Goode, attorney for Danny Davis, interviewed and obtained the affidavit and sworn statement of a federal inmate housed at the Lafayette Parish Correctional Center, known in this proceeding as John Doe. Doe, in factual detail, corroborated the defenses' theory about inmate information sharing. Doe stated that he observed some of the witnesses that the government called to testify against the Colombs, specifically Cleveland "Gotti" Benoit, Marcus Leday, "Cadillac" (presumably Darvin Philips), and Rodney Green preparing to testify in the Colomb case by "reviewing documents, including photographs, as well as discussing various physical features of the various persons against whom they were going to testify." [Rec. Doc. 460, Exhibit A].

On May 2, 2006, government representatives interviewed Doe. During the interview, Doe reiterated allegations made in his affidavit and sworn statement regarding information sharing that was occurring within the federal prison system, specifically the witnesses who testified against the Colombs. [Rec. Doc. 494]. Doe further referred to Dexter Harmon, a key government witness, as being involved. Doe also told the investigators that he had overheard Marcus Leday and Cadillac (Darvin Phillips) discussing "getting time cut off of their sentences for testifying against those people from Church Point, Louisiana." [Rec. Doc. 494].[10]

On April 20, 2006, Quinn Alex entered into a *Kastigar* agreement with the gov-

---

**10.** Church Point, Louisiana is the small, rural hometown of defendants.

ernment. On May 10, 2006, with permission of his court appointed attorney, representatives of the government interviewed Alex. Alex reiterated in detail how Charles Alexander offered to sell him information about individuals coming up for trial, consistent with his March 16, 2006 letter to AUSA Mickel. Alex specifically stated that Anderson offered to sell him pictures of one of the Colomb boys.[11] Alex further provided the interviewing government agents with copies of wire transfer receipts in the sum of $2,200, the amount Alex alleged Anderson charged him for information about defendants in pending criminal trials in his letter to AUSA Mickel.

The Court is unaware of the exact post-trial efforts made by the United States Attorney for the Western District of Louisiana to follow up on the information received from either Doe or from Alex. At the July 14, 2006 hearing, the government attorney told the Court that a follow-up investigation would be conducted by the United States Attorney for the Southern District of Texas, the judicial district in which selling and sharing of information between federal inmates allegedly occurred. The Court ordered the government to report the results of its investigations in the two jurisdictions, as well as any other jurisdiction to which the investigation(s) might lead. On August 11, 2006, the Assistant United States Attorney assigned to the case provided to the Court a copy of his August 9, 2006 correspondence to the United States Attorney for the Southern District of Texas, including a copy of his file related to the investigation of the Alex matter. [Rec. Doc. 530].

Issues that have arisen in this case—before trial, during trial and after trial—are troubling. While it may not be, as argued by one of the defense lawyers, that "a cancer is growing within the incarceration system," occurrences in this case suggest that a systemic problem may exist within the penal facilities operated by the Federal Bureau of Prisons.[12] In the view of the trial judge, the issues raised herein are so substantial and grave that those who have the power and the authority to do so need address them.[13] It is therefore requested that the United States Attorney for the Western District of Louisiana seriously consider whether, it is not only ap-

11. During his interview, Alex also told investigators that Anderson offered to sell him pictures of "BOO" (Richard Allen) and on another occasion Alex witnessed Anderson offer to sell Junior Lnu, an inmate from Florida, a photograph of George Celestine. See Footnote 6, *supra*. Alex further stated that he looked at the photograph and advised Junior Lnu that the picture was not one of George Celestine.

12. The Court does not believe nor conclude, based on the record before it, that the government acted in bad faith or that it (*knowingly*) put forth false testimony that would constitute a *Napue* violation. (referring to *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959))(emphasis added).

13. Federal Rule of Criminal Procedure Rule 35(b) was amended in 2002 to remove the previous one-year time limit for a witness to provide substantial assistance to the government in the prosecution of another in the hope of the government filing a motion to reduce the witness' sentence or penal exposure. In multi-year drug conspiracy cases such as the case at bar, which alleges related overt acts in furtherance of the conspiracy beginning in November 1991 until defendants' arrests in October 2001, the result of the rule change allows at best, stale testimony, at worst, perjured testimony. It affords an individual who has been sentenced to a lengthy federal prison term to help himself by testifying about drug transactions that occurred many years earlier allegedly involving a defendant on trial in order to gain a reduction in the inmate witness' sentence. This is particularly problematic when the government, as in the *Cotton* case, *supra*, also a ten-year drug conspiracy case, provides the inmate witnesses pre-trial, with photographic lineups which include the defendants and copies of government agent 302 reports.

propriate, but also *necessary,* to avoid even the appearance of a conflict of interest, that an independent division of the United States Department of Justice investigate the issues that arose in this case, as well as the sharing of information in Bureau of Prisons institutions by federal inmates, regarding pending federal criminal cases for remuneration or otherwise.

## ORDER

For the reasons set out in the Ruling issued this date, pursuant to Federal Rule of Criminal Procedure 33, concluding that a denial of defendants' motions would result in a miscarriage of justice and finding that the interest of justice so requires,

IT IS ORDERED that the Motions for New Trial filed by defendants Mary Ann Colomb [Rec. Doc. 462], Edward Colomb [Rec. Doc. 464], Sammy Davis, Jr. [Rec. Doc. 468], and Danny Davis [Rec. Doc. 469] are GRANTED and the jury verdicts rendered on March 31, 2006 [Rec. Doc. 448] are VACATED.

IT IS FURTHER ORDERED within thirty (30) days of the entry of this order, the government is to notify the Court: (1) that it will appeal the order vacating the jury verdicts and granting new trials; or (2) that it will request a new trial date for defendants; or (3) that it will dismiss the indictment against defendants.

IT IS FURTHER ORDERED that, in the event the government requests that the matter be reset for trial, after an unsuccessful appeal or within thirty (30) days of the entry of this order, the parties are advised the Court will not set a new trial date until an investigation of the issues that arose in this case is completed and a report of that investigation is made to the Court.